# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs February 23, 2012

## STATE OF TENNESSEE v. ALAN BRYANT MINCHEW

**Appeal from the Circuit Court for Williamson County**
**No. IICR045574     Timothy L. Easter, Judge**

___

**No. M2011-01863-CCA-R3-CD - Filed May 3, 2012**

___

The defendant, Alan Bryant Minchew, pleaded guilty to first offense driving under the influence of an intoxicant ("DUI") with a blood alcohol level of .08% or more and reserved as a certified question the propriety of the vehicle stop leading to his arrest. Determining that the evidence does not preponderate against the trial court's findings in its order denying the motion to suppress, we affirm the judgment of the trial court.

## Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

Venus Niner, Franklin, Tennessee, for the appellant, Alan Bryant Minchew.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Kim R. Helper, District Attorney General; and Kelly Lawrence, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the August 9, 2011 evidentiary hearing on the motion to suppress, Tennessee Highway Patrol Trooper Charles Achinger testified that he worked the 10:00 p.m. to 6:00 a.m. shift on November 19, 2010. At approximately 1:53 a.m., Trooper Achinger received a report from dispatch to be on the lookout ("BOLO") for a "large black pickup truck swerving [down] I[nterstate]-65 southbound at Concord Road with a partial tag of 339." Trooper Achinger was traveling westbound on Moores Lane at the interstate crossing, about one and one-half miles south of Concord Road, so he immediately entered the southbound lane of the interstate via the Moores Lane ramp. As he entered the interstate, Trooper Achinger observed a truck matching the description contained in the BOLO. When

Trooper Achinger sped up to meet the truck, he observed the vehicle "swerve[] outside of its lane to the left, and then back," straddling the line between the two lanes. He also observed the vehicle "drift[ing] back and forth between the lanes, not crossing them, but touching them." Trooper Achinger testified that the truck was traveling approximately 55 miles per hour in a 70-miles-per-hour-zone. He followed the vehicle for approximately one mile and confirmed that the partial tag number was 339 on the monitored vehicle. Trooper Achinger stopped the defendant's vehicle and ultimately arrested the defendant for driving under the influence.

Trooper Achinger testified that the defendant's swerving was a sign of "possible impairment" and that he would have stopped the defendant's vehicle based upon his own observations of the operation of the vehicle absent his receiving the BOLO alert. Trooper Achinger testified that he did not see the defendant initiate his turn signal throughout the observation until Trooper Achinger activated his blue lights to stop the vehicle. He maintained at the suppression hearing that the defendant's failure to maintain his lane of traffic was an offense justifying the stop.

At the evidentiary hearing on the motion to suppress, the defendant argued that Trooper Achinger lacked reasonable suspicion to justify the stop of his vehicle. The trial court accredited the testimony of Trooper Achinger and noted that the trooper's dashboard camera video recording confirmed the trooper's testimony. The video recording shows the defendant's truck straddling the line between two lanes for some time while traffic is passing in the neighboring lane. The video recording further reveals the truck's swerving within the lane, frequently touching or driving on both the dotted line dividing the lanes and the fog line of the shoulder. The court found that Trooper Achinger's observations of the vehicle immediately confirmed the BOLO report and that specific and articulable facts, the defendant's erratic driving and slow speed, justified the stop of the vehicle. Accordingly, the trial court denied the defendant's motion to suppress.

On August 23, 2011, the defendant pleaded guilty to DUI, first offense and DUI with a blood alcohol concentration of .08% or above, and the trial court merged those counts. At the plea submission hearing, the defendant acknowledged that his blood alcohol concentration was .10% on the night of the offense. The defendant also reserved, with the consent of the State and the trial court, a certified question of law that is dispositive of the case: "Whether the motion to suppress should have been granted as the stop of the defendant's vehicle was unlawful because the officer lacked reasonable suspicion?" Discerning that this question was properly certified pursuant to Tennessee Rule of Criminal Procedure 37(b), we will examine the trial court's ruling on the motion to suppress.

When reviewing a trial court's findings of fact and conclusions of law on a

-2-

motion to suppress evidence, we are guided by the standard of review set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. When the trial court does not set forth its findings of fact upon the record of the proceedings, however, the appellate court must decide where the preponderance of the evidence lies. *Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). We review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See*, *e.g.*, *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), the State in the present situation carried the burden of demonstrating the applicability of an exception to the warrant requirement, s*ee*, *e.g.*, *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (temporary detention of an individual during a traffic stop constitutes seizure that implicates the protection of both the state and federal constitutions); *Keith*, 978 S.W.2d at 865. The authority of a police officer to stop a citizen's vehicle is circumscribed by constitutional constraints. Police officers are constitutionally permitted to conduct a brief investigatory stop supported by specific and articulable facts leading to reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-23 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2002). Whether reasonable suspicion existed in a particular case is a fact-intensive, but objective, analysis. *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). The likelihood of criminal activity that is required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A court must consider the totality of the circumstances in evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). The totality of the circumstances embraces considerations of the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993). The objective facts on which an officer relies may include his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

The defendant argues on appeal that his driving imperfections did not rise to the level of affording reasonable suspicion to justify Trooper Achinger's stop. In this case, however, "the defendant's driving constituted more than garden variety imperfect driving." *See State v. Bobby Gene Walker, Jr.*, No. E2005-02200-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Knoxville, July 26, 2006). Someone traveling on the interstate observed the defendant's "erratic" operation of his vehicle, prompting a telephone call to the Brentwood Police Department and the ensuing BOLO alerting Trooper Achinger. Trooper Achinger observed the vehicle's swerving into another lane and straddling the line between the lanes for a period of time. He also observed the vehicle's swerving within its own lane and touching the lines on numerous occasions. The video recording from the trooper's dashboard camera confirmed the trooper's testimony. The defendant also drove 15 miles below the speed limit. These circumstances are distinguishable from the minor imperfections in driving that our supreme court described in *Binette*. *See Binette*, 33 S.W.3d at 219-20; *see also, e.g.*, *State v. Joseph A. Patterson*, M2010-02360-CCA-R3-CD (Tenn. Crim. App., Nashville, Aug. 22, 2011) (trial court accredited officer's testimony concerning defendant's swerving constituted reasonable suspicion to support traffic stop); *State v. Jerome D. Manning*, No. M2001-03128-CCA-R3-CD (Tenn. Crim. App., Nashville, Dec. 20, 2002) (reasonable suspicion existed when defendant's vehicle twice crossed the center line into the opposite travel lane and crossed onto the right shoulder); *State v. Chris A. Jefferson*, No. E2000-00429-CCA-R3-CD (Tenn. Crim. App., Knoxville, Dec. 8, 2000) (reasonable suspicion supported traffic stop when defendant was observed "cutting a 'z' continuously" from dotted center line to shoulder fog line). In the present case, the trial court accredited the testimony of Trooper Achinger, and the evidence does not preponderate against the trial court's findings. Accordingly, we affirm the trial court's denial of the motion to suppress. The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE